## ADVANCE VENEER AND LUMBER COMPANY *v.* HORNADAY.

[No. 7,347. Filed December 13, 1911.]

1. NEW TRIAL.—*Motions for Change of Venue.*—The erroneous overruling of a motion for a change of venue constitutes a ground for a new trial. p. 86.

2. ATTORNEY AND CLIENT.—*Services.*—*Presumptions.*—*Corporations.* —*Officers.*—Where the record shows that certain attorneys answered for defendant corporation and represented it throughout the case, it will be presumed that their action therein was duly authorized, though the secretary of the company says that they did not follow his judgment and direction. p. 87.

3. VENUE.—*Change of.*—*Courts.*—*Rules.*—*Discretion.*—When properly asked, courts have no discretion as to granting a change of venue; but where the trial courts have reasonable rules as to the time for making such motion, such rules must be complied with. p. 87.

4. APPEAL.—*Record.*—*Failure to Show Absence of Rules of Court.* —*Change of Venue.*—*Presumptions.*—Where the record on appeal fails to show that there was no rule of the trial court requiring applications for a change of venue to be made at least one day before the day of trial, and the record affirmatively shows that appellant knew, long before the application was made, and one day before the trial, of the causes relied on for a change of venue, there is no affirmative showing of error, since the trial court might have promulgated such a rule, and, if so, it would have been reasonable, and the motion for a change would have been properly denied.   p. 88.

5. VENUE.—*Change of.*—*Ignorance of Rules of Court and of Court Proceedings.*—*Attorney and Client.*—Ignorance by a party or his attorneys of the rules of a court as to the time for filing applications for a change of venue, or of the ruling of a court in granting a change of venue, or of the filing of a motion therefor, where a general appearance was entered in the case, cannot excuse the delay in filing a motion for a change of venue later than the time allowed by the rules of the trial court.   p. 88.

6. TRIAL.—*Instructions.*—*Harmless Error.*—An instruction that the burden of proof was on defendant to prove both paragraphs of its answer is not prejudicial, where the two paragraphs were substantially the same.   p. 90.

7. ESTATES.—*Real.*—*Growing Timber.*—*Contracts.*—*Sales.*—A written contract for the sale of growing timber constitutes a sale of an interest in the land; and the purchaser, in the absence of an express clause for forfeiture if not removed before a certain time, may enter the land and remove such timber after the date set for removal, but, in such event, he will be liable for all resulting damages.   p. 91.

8. ESTATES.—*Growing Timber.*—*Removal.*—*Contracts.*—*Breach.*— *Damages.*—Where a purchaser agreed to remove the purchased timber before a certain date, and to pile the brush, but failed to do so, removing a part of the timber later, an instruction that if such purchaser left any of such timber after such date and failed to remove it, and failed to pile the brush, the jury might take into account the reasonable cost of removing such timber and of piling such brush, as well as the reasonable rental value of the land for the time its cultivation was prevented, was not erroneous.   p. 93.

9. DAMAGES.—*Breach of Contract.*—*Growing Timber.*—Where a complaint alleges that defendant failed to remove certain timber and to pile the brush therefrom, as defendant contracted to do, a verdict for the plaintiff is supported, where there was evidence that the land on which the timber stood was suitable for cultivation, that defendant delayed the cutting and removal of the

timber for nearly two years, that defendant failed to pile the brush, that it was worth between $300 and $400 to cut the remaining timber and to pile the brush and that the reasonable rental value of the land as defendant left it was from seventy-five cents to $1 an acre, and as contracted for, $2.50 an acre. p. 93.

From Hendricks Circuit Court; *Thomas J. Cofer,* Special Judge.

Action by Charles P. Hornaday against the Advance Veneer and Lumber Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Barrett & Barrett* and *Lew Wallace,* for appellant.

*Brill & Harvey,* for appellee.

MYERS, J.—Appellee, by a contract in writing dated April 25, 1906, sold to appellant "the timber of every kind, size and character" within a certain boundary on his land in Hendricks county. It was stipulated that appellant was to remove all said timber by August 1, 1906, and for that purpose it was at all times to have ingress to and egress from said land. It was further agreed that appellant was to pile all brush and limbs left from said timber, "such piling of brush and limbs to render the burning thereof easily accomplished." The underbrush was not to be cut or piled.

Appellee alleged that he fully performed the contract on his part. The alleged breaches on the part of appellant were (1) failing and refusing to remove said timber within the time named in the contract, and in allowing large quantities to lie upon the land, thereby rendering it unfit for cultivation; (2) failing and refusing to pile the brush and limbs left from said timber. Appellee alleged that because of said defaults he was prevented from using and cultivating said land during the years 1907 and 1908, and that he was obliged, at his own cost and expense, to remove said timber and to pile said brush and limbs. Damages were demanded.

There was an answer in three paragraphs. The first was

a general denial, the second and third were addressed to so much of the complaint as counted on damages for failure to remove the timber on or before August 1, 1906.   Each paragraph proceeded upon the theory that appellee had waived the time fixed in the contract for the removal of the timber, and that it was removed within the time agreed to by appellee.   There was a reply in general denial, and a trial by jury, with a verdict and judgment in favor of appellee.

Appellant's motion for a new trial, assigning thirty reasons in support thereof, was overruled, and this ruling is assigned as error.

The first and second reasons in support of this motion are alleged error in the overruling of appellant's motions for a change of venue of the cause from Hendricks county.   These rulings were properly assigned as reasons for a new trial.   *Shoemaker* v. *Smith* (1881), 74 Ind. 71; *Town of Knox* v. *Golding* (1910), 46 Ind. App. 634.

This action was commenced in the Superior Court of Marion County, January 14, 1908.   On February 14, 1908, appellant answered the complaint by a general denial.   On February 25 appellee filed his motion and affidavit for a change of venue of the cause from Marion county, which the court sustained, and thereupon sent the cause to Hendricks county.   In the brief it is said that appellee failed to perfect the change within the time allowed, but as appellant makes no point on this part of the proceedings, we will give it no further attention.

With reference to appellant's motions for a change of venue from Hendricks county, each affidavit stated the facts required by statute.   §422 subd. 3 Burns 1908, §412 R. S. 1881.   These affidavits were made by appellant's secretary, and while they state additional facts, they are unimportant, in view of other facts disclosed by the record.   On March 18, 1908, the transcript on change of venue from the Su-

perior Court of Marion County was filed in the office of the clerk of the Hendricks circuit court. Appellant admits that it knew on June 1 that this action was pending in said court. It was then fully informed regarding appellee's undue influence over the citizens of that county, and that an odium attached to appellant, and to its defense, on account of local prejudice. It appears that the cause was set for trial on June 19, but on a motion by appellant it was continued, and by the court reset for trial on June 22. In the meantime, on June 20, the first affidavit to change the venue was filed and overruled, and at the request of appellant the cause was postponed until June 26, when, on appellant's application, the cause was continued indefinitely.

The reasons given for not filing the motion and affidavit at an earlier date are without merit. The attorneys who appeared for appellant and answered the complaint

2. in the Superior Court of Marion County, continued to represent it throughout all the proceedings had in the case, and their authority so to do has at no time been questioned or denied. So that any claim on the part of appellant's secretary, that he had no knowledge of the pending action prior to June 1, or that his instructions to the attorneys after that time had not been followed, can have but little, if any, weight in considering the present question. In the absence of a showing to the contrary, we must assume that the attorneys had authority from appellant to appear, and that they acted throughout the case in the interest of their client, using their best judgment, and following authentic instructions, although not in line with the individual judgment and directions given by the secretary.

While we adhere strictly to the rule that courts have

3. no discretion in granting a change of venue, where the necessary facts are made to appear by a proper affidavit, yet the party who would avail himself of this statutory provision must promptly apply to the court for such

change after he discovers that such facts do exist, if he would avoid a rule of court limiting the time within which such application must be made.

In this case appellant knew that appellee lived in Hendricks county, and for many days prior to the day the cause was set for trial appellant was apprised of all the facts. It further appears that for months prior to June 19 appellant gave but little attention to the court proceedings relative to this cause. We must indulge every reasonable presumption in favor of the rulings of the trial court, and keep in mind that courts have inherent power to adopt and enforce reasonable rules for conducting the business therein, and such rules, when not repugnant to the laws of the State, are binding alike on the court and litigants. *Magnuson* v. *Billings* (1899), 152 Ind. 177; *Rooker* v. *Bruce* (1908), 171 Ind. 86; *State* v. *Van Cleave* (1902), 157 Ind. 608. When the first of these rulings was made, it does not appear that the

4. Hendricks Circuit Court had no rule in force requiring the applicant to make the application for such change at least one day before the day the cause was set for trial. If there was such a rule, it was reasonable (*Vail* v. *McKernan* [1863], 21 Ind. 421; *Hoke* v. *Applegate* [1884], 92 Ind. 570; *Jones* v. *Rittenhouse* [1882], 87 Ind. 348), and the facts disclosed by the record, and undenied, would justify the conclusion that appellant had notice of the causes relied on for the change long before the first affidavit was filed, and one day before the case was to be called for trial. If so, the motion was not seasonably made, and the court was justified in refusing to exclude the application of its rule. *Bernhamer* v. *State* (1890), 123 Ind. 577; *Goodwin* v. *Bentley* (1903), 30 Ind. App. 477.

On September 7 the second affidavit was filed. It affirmatively appears from this affidavit that under the rules then in force in the Hendricks Circuit Court, the time

5. given in which to make applications for changes of venue had passed. Appellant does not claim that it

did not know of the grounds entitling it to a change in time to apply therefor in accordance with the time limit given by the rules of the court, but it is stated that neither it nor its attorneys had any knowledge of any rule of said court relating to changes of venue until it appeared therein, nor did either have actual knowledge that the venue of said cause had been changed to that court until after the time limited by said rule for the filing of such affidavits in such cases had elapsed.

The excuse offered for this lack of knowledge is that at the time the motion for the change from the Marion Superior Court was filed, and sustained, appellant was not actually in court, either in person or by attorney, and had not been served with notice that such motion had been filed. That the court, in sustaining the motion, correctly ruled, is not questioned. Appellant had entered its full appearance, and thereafter it must be regarded as being in court for all intents and purposes of the case as made by the complaint, and was bound to take notice of the law authorizing the plaintiff to apply for a change of venue from the judge or from the county. The change of venue to the Hendricks Circuit Court carried with it appellant's appearance in that court, and from that time on it must be regarded as subject to its rules unless the facts or peculiar circumstances appearing will relieve it from their operation. The reasons given by appellant for not knowing of the rule, and for not filing its motion within the time fixed by such rule, amounts to no more nor less than inexcusable neglect, and cannot be allowed to set aside a rule having the force and effect of law. *Rout* v. *Ninde* (1887), 111 Ind. 597; *Moulder* v. *Kempff* (1888), 115 Ind. 459; *Magnuson* v. *Billings, supra; City of Columbus* v. *Strassner* (1894), 138 Ind. 301.

It has been held that where a party did not know of the cause for a change of venue until after the time limited by a rule of court for filing his affidavit therefor, he would be entitled to a change, notwithstanding the rule. *Shoemaker*

v. *Smith, supra; Ogle* v. *Edwards* (1893), 133 Ind. 358. But in this case, the lack of knowledge relied on relates to a rule of court, and not ignorance of the facts during the time allowed by the rule entitling the applicant to a change. The last proposition is upheld upon the theory that the judge of the court and the citizens of the county are presumed to be impartial and free from prejudice, but even then, when knowledge to the contrary becomes known to a party, and he desires a change of venue on that account, he must make his application seasonably after discovering that such facts do exist. *Ogle* v. *Edwards, supra.* Appellant seeks to have this rule applied upon its showing ignorance of a rule of court. This we cannot do, for the reason that there is no presumption that the court had no rule limiting the time for the filing of an application for a change of venue, and for the further reason that a person cannot escape the force of such a rule by voluntarily absenting himself from the court, and then offering such absence as an excuse for not complying with it.

The remaining reasons here urged in support of the motion for a new trial relate to certain instructions given to the jury by the court on its own motion, and in refusing to give to the jury certain instructions requested by appellant, also in permitting certain testimony to go to the jury over appellant's objection.

The first instruction given to the jury is claimed to be erroneous, for the reason that it placed upon appellant the burden of proving the material averments of both the 6. second and third paragraphs of answer, when proof of either paragraph would have constituted a defense. If either paragraph would require more proof than the other, there might be some reason for appellant's contention. Both paragraphs proceed upon the same theory, and the only difference we see in them is that one states with greater detail than the other the facts showing a waiver of the time

fixed in the contract for removing the timber. In this instance the objection is technical, and the instruction could not possibly have worked harm to appellant.

As to the other reasons assigned by appellant in support of its motion, it is claimed that by the terms of the contract the rights and liabilities of the parties were fixed by 7. the situation as it existed on August 1, 1906, or, in other words, that appellant's right to enter upon the land, and cut and remove standing timber terminated on that date, and that all it did thereafter in the way of cutting and removing timber was with appellee's consent and at his request, and that it cannot be held liable for changed conditions of the land as upon a breach of contract, which, by its own express provisions, had ceased to exist prior to the change of which complaint is made.

This argument is based on the theory that the contract should be construed as a sale of only so much timber as was actually removed on or before August 1, 1906. In support of this contention, we have been referred to many cases holding that the sale of standing timber, with a fixed period of time to cut and remove it, is not a contract for the sale of an interest in land, but is an executory agreement for the sale of chattels, and the timber standing at the end of such period belongs to the landowner. See cases cited in note to *McRae* v. *Stillwell, etc., Co.* (1900), 55 L. R. A. 513, 526.

Whatever may be the rule in other states, in this State a contract for the sale of standing timber is to be regarded as a sale of an interest in land. *Owens* v. *Lewis* (1874), 46 Ind. 488; *Hostetter* v. *Auman* (1889), 119 Ind. 7.

We have examined all the cases cited by appellant, as well as others not cited, and in nearly all of those cases the questions arose and the contract was construed in actions of trover, or for trespass involving the ownership of the timber standing at the expiration of the time given in the contract for its removal. In most of those cases, the contract, in

some instances similar in terms to the one in this case, was construed to be a sale of only such portion of the timber as was removed within the time limited for that purpose.

But in this State the rule seems to be different where the contract contains no provision to be performed by the vendee as a condition precedent to the ownership of the timber, nor forfeiture clause either as to the timber, money paid, or the right to go upon the land. There is nothing in the conduct of the parties to indicate that either looked upon the contract as having terminated on August 1. Appellant had removed but a small amount of the timber it had purchased, paying therefor $1,800. The contract purported to be an absolute sale of all the timber on certain land, with the right to enter upon said land at all times, cut and remove timber, with the following provision: "However, it is understood and agreed that said timber is to be removed by August 1, 1906."

In many respects the questions now being considered are not unlike those presented in the case of *Halstead* v. *Jessup* (1898), 150 Ind. 85, and the ruling in that case, so far as it is applicable, controls this case. In the case just cited it was said: "The law does not favor forfeitures, and will not enforce them in the absence of clearly stated conditions of forfeiture. Here, as we have said, there is no stated condition of forfeiture. If by delay in taking the timber, after the period named, damage should accrue to the owner of the land, it could not be questioned that such damage could be recovered. But it would be manifestly unjust that mere delay should forfeit both the appellant's money and his timber, and that the appellee should become the owner of the timber upon the strength of an implied forfeiture." See, also, *Watson* v. *Adams* (1904), 32 Ind. App. 281; *Zimmerman Mfg. Co.* v. *Daffin* (1906), 149 Ala. 380, 42 South. 858, 123 Am. St. 58, 65.

In this case, appellant, with the knowledge and consent of appellee, after the time limit fixed in the contract, entered

upon the land, cut and removed practically all the remaining timber it had purchased. It is not the theory of the complaint that damages had accrued to appellee on August 1. It counts upon damages accruing after that time by reason of appellant's delay in removing the timber and piling the brush as it had agreed to do. Therefore, an instruction on the measure of damages, which permitted the jury to take into account the reasonable cost of removing the timber and piling the brush, which appellant had failed to do under its contract, as also the reasonable rental value of the land for the time its agricultural cultivation was prevented by such failure and delay of appellant, was not, under the issues or the evidence, erroneous.

It is also insisted that there is no evidence to sustain the verdict. By reference to the evidence it will be seen that the land on which the timber stood, if cleared, was suitable for agricultural purposes; that on sixty-four acres there were about one hundred trees to the acre; that appellant began cutting and removing the timber a few days before August 1, 1906. After that date this work continued at intervals until about January 1, 1908, when appellant ceased work, leaving on the land some scrubby maple and other small trees scattered over about forty-seven acres, which trees were not suitable for any purpose except wood. The land was covered with underbrush, and the tops of the trees were left just as the trees fell. They were not trimmed up, nor was there any attempt to pile the brush and limbs of the trees so cut except on about five acres, which was done in the fall of 1907. About the time appellant began to cut the timber, and several times after August 1, in conversation with appellant's secretary, appellee urged upon said secretary the importance of removing the timber, that he might have the land for cultivation, saying that he wanted the timber off and the limbs piled; that the delay in removing the timber was preventing him from cleaning the land, and that such delay was a damage to him. In each

of these conversations said secretary assured appellee that the timber would be removed promptly. Appellant did not pile the limbs and brush from the tree tops, and appellee estimates that it was worth between $300 and $400 to do so, and to remove the timber left by appellant on the land. Under the conditions in which appellant left the land, its reasonable rental value was from 75 cents to $1 an acre. The reasonable rental value of the land with the timber removed and the brush piled was $2.50 an acre, and with the land cleared, its rental value was $10 an acre. Appellant's failure to remove the timber and pile the brush, on or before August 1, 1906, prevented appellee from cultivating the land during the seasons of 1907 and 1908.

The reasons offered by appellant, tending to show that the trial court erred in overruling its motion for a new trial, cannot be sustained.

Judgment affirmed.