98  531
104  519
98  531
108  105
98  531
121  284
98  531
129  319

### Baxter, Reed & Company v. John Hecht and Mary P. Hecht, Appellants.

**Fraudulent Conveyance:** HUSBAND AND WIFE. A husband sold some land of his in which there was no homestead right, on contract. His wife signed the contract. A contract was also made on part of a third person to sell the wife a piece of land, and she orally agreed with her *husband*, and not with the *purchaser of the land*, that when the sale of the husband's land was consumated, its proceeds should pay for that bought by the wife. All this time the husband was solvent. But at the time when conveyance was made to the wife he had become insolvent. *Held*, the deed to the wife is fraudulent as to the creditors of the husband, who became such after the real estate contracts were made, and before they were consumated by delivery of deeds. *Dunlap v. Thomas*, 69 Iowa, 358, *distinguished*.

*Appeal from Ida District Court.*—HON. Z. A. CHURCH, Judge.

### Monday, May 25, 1896.

SUIT in equity to subject certain land, the legal title to which is in the name of the defendant, Mary P. Hecht, to the payment of a judgment against the defendant John Hecht. There was a decree for the plaintiffs, and defendants appeal.—*Affirmed*.

*F. F. Kiner* and *J. C. Walter* for appellants.

*Chas. S. Macomber* and *W. E. Johnston* for appellees.

ROTHROCK, C. J.—The defendants are husband and wife. For a number of years the husband was the owner of a farm of two hundred and forty acres in Ida county. In June, 1892, he entered into a written contract by which he agreed to sell and convey the

farm to one Lohff. The purchaser paid fifty dollars at that time, and agreed to pay the whole of the purchase money by the first day of March, 1893. The defendant, Mary P. Hecht, joined with her said husband in the written contract, and signed her name thereto; and a deed was executed by the defendants on the thirtieth day of December, 1892, but it was not delivered until some time after that. Soon after making the sale, the defendants commenced negotiations with one Mrs. Shoemaker to purchase a farm of one hundred and sixty acres from her, and an agreement was closed for the purchase of the land in the month of September, 1892, and a formal contract in writing was made, and signed October third, in the same year. This was a contract of purchase of the farm by the defendant, Mary P. Hecht. The deed or deeds of the Shoemaker land to Mrs. Hecht were executed on the twenty-first day of February, 1893, and they were delivered to her about the first day of March after that. The two hundred and forty acre farm was sold for eight thousand four hundred dollars. It was mortgaged for the sum of two thousand dollars; so that the purchase money coming to Hecht from the sale was six thousand four hundred dollars. The farm of one hundred and sixty acres was purchased for four thousand eight hundred dollars. When the purchaser from the defendants paid for the two hundred and forty-acre farm, a sufficient amount of the money was applied on the purchase of the Shoemaker farm to pay for the same, except an amount to become due on a mortgage which Mrs. Hecht assumed to pay. On the seventh day of January, 1893, the defendant John Hecht executed a note as security for his son for four hundred and seventy dollars. The plaintiffs herein became the owners of this note, and commenced an action upon it, and recovered a judgment. They caused execution

to issue, which was returned "No property found," and they commenced this action in equity to subject the land purchased from Shoemaker to the payment of the judgment.

It will be observed that the debt for which the judgment was obtained was contracted after the real estate contracts were made, but not before they were consummated by the delivery of conveyances of the land. If there were no other facts in the case, it is very plain that the sale of one farm, and the purchase of another, and vesting the title in the wife, would be void as to creditors, unless, at the time of the conveyances and the provision made for the wife, the husband was solvent, and creditors were not thereby affected to their prejudice. It is contended by counsel for appellants that the evidence shows that the husband was solvent when the contracts of purchase were entered into. We have examined the testimony of the witnesses, and we think that there is a fair preponderance sustaining that proposition. But when the conveyances were made and delivered, after the debt now in controversy was contracted, it is very plain that the husband was insolvent; and, if the right of the wife in the farm now owned by her is to be determined as of the time when she acquired the title to the land, the conveyance to her is what is known as a "voluntary conveyance," and the land is liable for the debt. As we have said, the evidence shows quite satisfactorily that the husband was solvent when the contracts of purchase were made. It may be that he was not then "solvent" in the strict sense that he was able to pay all of his debts on demand; but, so far as appears, the proceeds of the farm he sold, after deducting the amount necessary to purchase the Shoemaker land, were sufficient to pay all of his debts. If the rights of the wife accrued at that time, then the decree cannot be sustained, because the husband had the right to make

such a provision for his wife, if, by so doing, there was sufficient money or property left to pay his debts. *Stephenson v. Cook*, 64 Iowa, 265 (20 N. W. Rep. 182). And, if the wife acquired rights when the husband sold his farm, the plaintiffs cannot be allowed to complain, because the debt which they are seeking to collect from the wife's property, was not contracted when the farm contracts were executed, and there is no evidence that the appellants, by making the contract between them, intended thereby to defraud future creditors of the husband. It appears to us that the whole controversy depends upon whether the wife acquired a valid claim upon the money paid for the Shoemaker land, by the alleged agreement with her husband that she should have enough of the proceeds of the sale of the farm to purchase a farm of one hundred and sixty acres. The evidence shows conclusively that an oral agreement was made between them, and that, in pursuance thereof, she signed the contract and the deed. There is no evidence that the purchaser of the land was a party to this contract. The wife had an inchoate right to a distributive share or dower in the land. But there was no homestead right in the farm and the right of the wife to a distributive share, as well, as the husband's interest in the land, was liable for his debts. Code, section 2440. The land was liable to be sold on execution for his debts, and a purchaser at such a sale would hold the land discharged of any inchoate interest of the wife. Section 2203 of the Code, is as follows: "When property is owned by either husband or wife, the other has no interest therein which can be the subject of contract between them, or such interest as will make the same liable for the contracts or liabilities of either the husband or wife who is not the owner of the property. * * *" This provision relates to the interest which the husband or wife holds in the lands of each

other, and which arises or is created under the marriage relation. It has no application to any property interest which the husband or wife may have in the land of the other, based upon contracts with third persons, or derived from sources other than the marriage relation. *Linton v. Crosby*, 54 Iowa, 478 (6 N. W. Rep. 726); *In re Lennon's Estate*, 58 Iowa, 760 (12 N. W. Rep. 736); *Shane v. McNeill*, 76 Iowa, 460 (41 N. W. Rep. 166). If the defendant, Mary P. Hecht, had made a conveyance of her inchoate right in the farm of her husband to him, it would have been absolutely void, and she would not thereby have been deprived of her dower interest in the land if he had continued to own it until his death.

Some claim is made by appellants upon the ground that the wife joined in the written contract of sale of the farm. That contract is not set out in the record, and there is no claim that it contained any agreement or stipulation upon the part of the purchaser that any part of the purchase money was to be paid to Mrs. Hecht. On the contrary her rights were founded solely upon an oral contract made with her husband that, if she would join in the sale of the land, she should have enough of the money received therefor to purchase a farm of one hundred and sixty acres. The plaintiffs are bankers, and when both real estate transactions were consummated, the money was paid in and out of their bank as the money of the husband, and applied, so far as necessary, to the payment of the purchase money for the Shoemaker farm. If the contract had been made by the wife with the purchaser of the two hundred and forty acre farm that he would pay the money to her, it might be sustained, under the doctrine of the case of *Dunlap v. Thomas*, 69 Iowa, 358 (28 N. W. Rep. 637). But, as we have seen, no such contract was entered into by the defendant, Mary P. Hecht. Our conclusion is that her rights, as

against the creditors of her husband, did not accrue until after the debt now in controversy was contracted by her husband, and that, as he then did not have sufficient money or property to pay his debts after furnishing the money to pay for the Shoemaker farm, the decree of the district court is right, and it is AFFIRMED.